PAUL D. FUCHS and RHODA FUCHS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Fuchs v. Commissioner
Docket No. 836-71.
United States Tax Court
T.C. Memo 1974-6; 1974 Tax Ct. Memo LEXIS 315; 33 T.C.M. (CCH) 19; T.C.M. (RIA) 74006; January 14, 1974, Filed. Leonard Bailin, for the petitioners.
Curtis W. Berner, for the respondent. RAUM
MEMORANDUM FINDINGS OF FACT AND OPINION
RAUM, Judge: Petitioners Paul D. and Rhoda Fuchs, husband and wife, resided in Queens, New York, when they filed their petition herein, contesting the following income tax deficiencies determined against them by the Commissioner: Year
Deficiency
Addition to Tax
Section 6653(a),
I.R.C. 1954 1966
$3,762.71
$188.14
1967
306.91
Two issues remain for adjudication: (1) whether petitioners received unreported income in the amount of $8,000 in 1966; (2) whether the Commissioner erred in adjusting a claimed deduction for depreciation of an automobile for each of the years.
1. Unreported income. *316 Petitioner Paul D. Fuchs ("petitioner" or "Dr. Fuchs") is a physician engaged in the practice of internal medicine. During the tax years his office was in Whitestone, New York, near the Whitestone General Hospital, with which he was affiliated. He was also a member of a medical partnership from which he derived income.
Petitioners' 1966 and 1967 returns disclosed the following in respect of income from Dr. Fuchs' practice of medicine: Individual
Practice
Gross Receipts
Net Profit
Medical
Whitestone
Partnership
General
Year
Hospital 1966
$44,623.53
$18,589.06
$11,624.01
( $207.14)
1967
45,749.75
21,216.13
11,501.01
5,602.00
Dr. Fuchs' books and records relating to his medical practice were maintained under the supervision of an accountant who prepared the 1966 and 1967 returns involved herein.
In 1966 the Whitestone General Hospital was raising funds to build an addition to its facilities, and in that connection was issuing 10 percent debenture bonds. In July of 1966, Dr. Fuchs purchased $8,000 of such bonds, which were issued in the 3 names of his three minor children ($2,500 in bonds for each of two of them *317 and $3,000 for the third) with Dr. Fuchs as custodian under the Gift to Minors Act. These bonds were purchased with eight $1,000 bills.The Commissioner determined that "[in] the absence of adequate records your taxable income for the year 1966 has been increased $8,000" by reason of the cash payment for the foregoing bonds.
The sole matter in controversy in respect of this item is whether the $8,000 had its source in unreported income of Dr. Fuchs. The evidence produced by petitioners in explanation of the $8,000 may be summarized as follows:
Dr. Fuchs' father, Sammy Fuchs, was the owner and operator of a popular night club on the lower East side of Manhattan, known as "Sammy's Bowery Follies". Sammy was a person with a strong personality who would often act impulsively or unpredictably. In 1950 Sammy purchased a 12 carat diamond ring for his wife Bessie (petitioner's mother). Bessie wore the ring very seldom. It was kept "in the vault" most of the time. It was not insured because the premium was too high. In 1966 Sammy decided that the ring should be sold and the proceeds given to his grandchildren. Bessie acquiesced. She took the ring to "Gimbels" where it was left *318 on consignment for sale at $9,000. About two days later it was taken back from Gimbels 4 because of concern about its not being insured. Thereupon Sammy and Bessie took the ring to a diamond merchant or jeweler named Phil Apfelberg who had a place of business on an upper floor of a building at "Canal and the Bowery" and from whom the ring had originally been purchased in 1950. Phil Apfelberg thereupon repurchased the ring for $8,000 in cash. Sammy then phoned his son at the Whitestone Hospital, and both Sammy and Bessie drove to the hospital, where he delivered $8,000 in $1,000 bills to Dr. Fuchs, instructing him to purchase the debenture bonds for Dr. Fuchs' three children. Dr. Fuchs took the cash, and promptly purchased the bonds, which were registered in the names of his three children, as noted above. Sammy died in 1968 or 1969.
Two witnesses appeared before us, Bessie and Dr. Fuchs. Bessie told the story about the ring, its sale and the delivery of cash to her son. Dr. Fuchs testified about having received the cash from his father and his purchase of the $8,000 bonds for his three children. We were informed that Phil Apfelberg had retired and was living in Florida; *319 he was not called as a witness by either side.
The matter is purely factual, and the burden of proof is upon petitioners. Bessie's testimony about the ring was not satisfying. The story had its bizarre aspects. Nevertheless, we are reasonably satisfied by Dr. Fuchs' testimony that he 5 received the $8,000 in $1,000 bills from his father, from whatever source his father may have obtained them, and that these funds did not represent unreported income of petitioners. There is perhaps more to this case than meets the eye, and we do not have strong confidence in the result we reach, but our conclusion reflects our best judgment on all the evidence and we hereby find as a fact that petitioners did not have $8,000 of unreported income in 1966 in respect of this transaction.
2. Depreciation of auto. Dr. Fuchs purchased a new Lincoln automobile in 1966. His treatment of it on the 1966 and 1967 returns as being used exclusively for business purposes was not disturbed by the Commissioner. Nor did the Commissioner challenge either its reported cost of $7,471.98 or the three-year life over which it was depreciated on the returns. However, he did determine that the car had a salvage *320 value of $1,771.98 as of the end of its so-called three-year useful life, and made adjustments in the depreciation claimed so as to reflect this salvage value. No salvage value had been taken into account in petitioners' returns.
Petitioners have failed to establish that the Commissioner erred in finding a salvage value of $1,771.98. However, in adjusting the amount of allowable depreciation, the Commissioner does not appear to have reduced the amount of salvage value by 6 10 percent of basis, as required by section 167(f) of the 1954 Code. Accordingly, the Commissioner's adjustment will have to be revised in the
Decision to be entered under
Rule 155.